IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

CHARLOTTE KENNEDY                                                                PLAINTIFF
*on behalf of*
A MINOR CHILD, K.W.

vs.                                        Civil No. 6:07-cv-06080

MICHAEL J. ASTRUE                                                                DEFENDANT
Commissioner, Social Security Administration

### MEMORANDUM OPINION

Charlotte Kennedy ("Plaintiff") brings this action on behalf of a minor child, K.W., and pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying K.W.'s application for Supplemental Security Income ("SSI") under Title XVI of the Act.  The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings.  (Doc. No. 4).[1]  Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

Plaintiff protectively filed an application for SSI on behalf of her son, K.W., on November 12, 2004.  (Tr. 13, 49).  Plaintiff alleged K.W. was disabled due to a learning disability, attention deficit hyperactivity disorder ("ADHD"), and allergies.  (Tr. 131).  Plaintiff alleged K.W.'s onset

---

[1] The docket numbers for this case are referenced by the designation "Doc. No."  The transcript pages for this case are referenced by the designation "Tr."

1

date was March 24, 1997. (Tr. 49).

This application was initially denied on April 7, 2005 and was denied again on reconsideration on June 30, 2005. (Tr. 37-40). On August 22, 2005, Plaintiff requested an administrative hearing on this application. (Tr. 34). This administrative hearing was held in Hot Springs, Arkansas on October 12, 2006. (Tr. 602-613). Plaintiff and K.W. were present and were represented by Linn Reed at this hearing. *See id.* Plaintiff and K.W. testified at this hearing. *See id.* At the time of this hearing, K.W. was thirteen (13) years old and was in the seventh grade in school. (Tr. 605).

On February 23, 2007, the ALJ entered an unfavorable decision denying Plaintiff's request for disability benefits for K.W. (Tr. 13-26). In this opinion, the ALJ determined K.W. was born on March 24, 1993, was a school-aged child on November 12, 2004 (the date the application was filed), and was an adolescent on the day of the ALJ's decision. (Tr. 16, Finding 1). The ALJ determined K.W. had not engaged in Substantial Gainful Activity ("SGA") at any time relevant to his decision. (Tr. 16, Finding 2). The ALJ determined K.W. had the following severe impairments: ADHD and a history of learning disorder for language/reading and mathematics. (Tr. 16-18, Finding 3). The ALJ also determined, however, that K.W. did not have an impairment or a combination of impairments that met, medically equaled, or were functionally equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). (Tr. 18-19, Finding 4).

The ALJ determined K.W. did not have an extreme or marked limitation in any of his six domains of functioning. (Tr. 19-26). The ALJ determined K.W. had a less than marked limitation in acquiring and using information, attending and completing tasks, and interacting and relating with others. (Tr. 21-26). The ALJ also determined K.W. had no or very little limitation in moving about

2

and manipulating objects, caring for himself, and caring for his health and physical well-being. *See id.* Based upon these findings, the ALJ determined K.W. was not under a "disability," as defined by the Act, from the date his application was filed on November 12, 2004 through the date of the ALJ's decision or through February 23, 2007. (Tr. 26, Finding 6).

On March 26, 2007, Plaintiff requested that the Appeals Council review the ALJ's unfavorable disability determination. (Tr. 7). On October 3, 2007, the ALJ declined to review this determination. (Tr. 4-6). On October 26, 2007, Plaintiff filed the present appeal. (Doc. No. 1). Both parties have filed appeal briefs. (Doc. Nos. 8-9). The parties consented to the jurisdiction of this Court on November 7, 2007. (Doc. No. 4). This case is now ready for decision.

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

In this case, Plaintiff is seeking disability benefits on behalf of a minor child. On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Public Law No. 104-193, 110 Stat. 2105 (1996) (codified at 42 U.S.C. § 1382c(a)(3)(C)), which provided a more stringent standard for determining eligibility for Title XVI childhood disability benefits than the old law and prior regulations required. *See Rucker v. Apfel*, 141 F.3d 1256, 1259 (8th Cir. 1998); 142 Cong. Rec. H8913; H.R. Conf. Rep. No. 725, 104th Cong. 2d Sess. 328 (1996), reprinted in 1996 U.S. Code, Cong. and Ad. News 2649, 2716; Federal Register, Vol. 62, No. 28, p. 6409. Among other things, the new law amended Section 1614(a)(3) of the Act, 42 U.S.C. § 1382c(a)(3), and changed the statutory definition of disability for individuals under age eighteen (18) under the SSI program. Under the new standard, a child is entitled to disability benefits only if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* Pub. L. No. 104-193 § 211(a)(4)(c); 20 C.F.R. § 416.906. The new standard applies to all applicants who filed claims on or after August 22, 1996, or whose claims had not been finally adjudicated by August 22, 1996. Since Plaintiff filed her application in 2004, the new law applies.

Under the new law, the ALJ's disability determination is based upon a three-step analysis. *See* 20 C.F.R. § 416.924. First, the ALJ must determine whether the minor child has engaged in substantial gainful activity. If not, the ALJ will proceed to the second step where the ALJ must consider whether the child has a severe impairment. If a severe impairment is found, the ALJ will proceed to the third step. At this step, the ALJ, must consider whether the impairment meets, or is medically or functionally equivalent, to a disability listing in the Listing of Impairments ("Listings"),

*See* 20 C.F.R. pt. 404, subpt. P, app. 1. A minor child may be disabled if his or her impairment is functionally equivalent to a disability listing, even if the minor child's impairment does not meet the standard requirements for a disability listing. *See* 20 C.F.R. § 416.924(d)(1).

A single method is provided for evaluating whether an impairment is "functionally equivalent" to a disability listing, based upon six domains of functioning. The six domains are the following: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for himself or herself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). If the minor child claiming benefits has "marked" limitations in two of these domains or an "extreme" limitation in one of these domains, then the child's impairment is functionally equivalent to a disability listing. *See id.* § 416.926a(a); *Moore ex rel. Moore v. Barnhart,* 413 F.3d 718, 721 (8th Cir. 2005).

A "marked" limitation is a limitation that is "more than moderate" and "less than extreme." *See id.* § 416.926a(e); *Lehnartz v. Barnhart,* No. 04-3818, 2005 WL 1767944, at *3 (8th Cir. July 27, 2005). A marked limitation is one that seriously interferes with a child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e). An "extreme" limitation is more than "marked" and exists when a child's impairment(s) interferes very seriously with his or her ability to independently initiate, sustain or complete activities. *See id.* "Extreme" limitation is the rating the Commissioner gives to the most serious limitations. *See id.*

**3. Discussion:**

The parties do not dispute that K.W. meets the requirements of Step One (K.W. has not engaged in SGA) and Step Two (K.W.'s impairments are severe) of the Analysis. (Tr. 16-18, Findings 2-3). Plaintiff, however, does claim the ALJ erred in finding K.W. was not disabled at Step

5

Three of the analysis. (Tr. 18-26, Findings 4-5). Specifically, in her appeal brief, Plaintiff claims: (1) the ALJ erred by finding that K.W. did not meet the requirements of Listing 112.05(D) and (2) the ALJ erred by finding K.W.'s impairments were not functionally equivalent to one of the disability Listings. (Doc. No. 8, Pages 2-18). In response, Defendant claims the ALJ's disability determination is supported by substantial evidence in the record and that the ALJ properly found K.W. had no impairments that met, or were functionally equivalent to, a listed impairment. (Doc. No. 9, Pages 1-9). This Court will address Plaintiff's arguments in order.

### A. Listing 112.05(D)

For a claimant to qualify as disabled under Listing 112.05(D), that claimant must have the following: "A valid verbal, performance, or full scale IQ score of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." Plaintiff claims K.W. meets the requirements of this Listing. (Doc. No. 8, Pages 3-5).

In support of her claim that K.W. meets these requirements, Plaintiff relies upon the results of the consultative examination on March 24, 2005. (Doc. No. 8, Pages 3-5; Tr. 515-523). Dr. Brenda H. Nobles, Ph.D. conducted this examination and found that K.W.'s full-scale IQ score was 66. (Tr. 521). However, Dr. Nobles noted that K.W. *had not taken his medication* prior to the examination. (Tr. 515). Because K.W. had not taken his medication as prescribed before he was examined, the results from this examination are not reliable.[2] *See Estes v. Barnhart,* 275 F.3d 722, 725 (8th Cir. 2002) (holding that an impairment which can be controlled by treatment or medication is not considered disabling). Furthermore, as noted by the ALJ, no acceptable medical source in the record diagnosed K.W. with borderline intellectual functioning, and K.W.'s test results from October

---

[2] Even Plaintiff herself acknowledged K.W.'s behavior was under control as long as he was on medication. (Tr. 69, 142, 146).

6

31, 2002 noted that K.W. had an full-scale IQ score of 81. (Tr. 16-18, 487).

Plaintiff has the burden of establishing that K.W. meets all the requirements of a listed impairment. *See Johnson v. Barnhart,* 390 F.3d 1067, 1070 (8th Cir. 2004) (holding that the burden is on the claimant to establish his or her impairment meets or equals a listed impairment; in order to meet the requirements of a listed impairment, the impairment must meet all of the specified criteria of the listing). In the present action, Plaintiff has not meet her burden of establishing that K.W.'s claimed borderline intellectual functioning meets the requirements of Listing 112.05(D). In support of her claim, Plaintiff relies entirely upon the consultative report of Dr. Nobles, which was conducted at a time when K.W. had not taken any of his prescription medication. (Tr. 515-521). Because K.W. had not taken his medication prior to this examination, the results from this consultative examination are not reliable. *See Estes,* 275 F.3d at 725. Because Plaintiff has not met her burden of establishing K.W.'s impairment or impairments meet the requirements of Listing 112.05(D), this Court affirms the ALJ's determination on this issue.

**B. Substantial Evidence**

The evidence in this case consists of a number of medical and school records evaluating K.W.'s intellectual and behavioral functioning. (Tr. 64-601). These records date from 1993 until 2006. *See id.* However, the protective filing date for this application was November 12, 2004 (Tr. 13, 49), and SSI benefits are not payable prior to the claimant's alleged onset date. *See Cruse v. Bowen,* 867 F.2d 1183, 1185 (8th Cir. 1989). Therefore, the relevant time period in this case is between November 12, 2004 (the protective filing date) through February 23, 2007 (the date of the ALJ's decision). This Court will only exam the records in this case that date from the relevant time period.

**(1) Acquiring and Using Information**

In his disability determination, the ALJ found K.W. suffered from a less than marked limitation in acquiring and using information. (Tr. 20-21). The ALJ based this determination upon K.W.'s progression in school: "The child has completed fifth and sixth grades and been promoted to seventh grade in which he is currently enrolled." (Tr. 21). The ALJ also noted that K.W. had progressed "in age appropriate manner with only some resource class assistance." *See id.* Plaintiff, however, claims that K.W. has a marked limitation in acquiring and using information. (Doc. No. 8, Pages 7-9). In her appeal brief, Plaintiff argues that the findings of (1) K.W.'s teachers (Tr. 271), (2) Mr. Ken Webb (Tr. 343-345), (3) the Little Rock Pediatric Clinic (Tr. 410), (4) Dr. Brenda Nobles (Tr. 517), and (5) Community Counseling Services, Inc. (Tr. 592) support her claim that K.W. has a marked limitation in this domain.

First, K.W.'s teachers at Wilson Elementary noted that K.W. was a special education student and that K.W. would have to take special education classes for reading and language from the time period of August 20, 2004 through May 30, 2005. (Tr. 271). Second, in a report dated October 31, 2002, Mr. Ken Webb, a licensed psychological examiner, found K.W. had a "previous diagnosis of Attention Deficit Disorder" and had been receiving "special education services under the primary disabling condition of Specific Learning Disability." (Tr. 344). Mr. Webb also found that K.W.'s medical history was notable for asthma. *See id.* Third, on March 24, 1993, a physician from the Little Rock Pediatric Clinic found K.W. had a "borderline developmental delay." (Tr. 410). Fourth, on March 24, 2005, Dr. Nobles found K.W. to be mentally retarded. (Tr. 517). Fifth and finally, on May 30, 2005, a counselor at Community Counseling Services, Inc. found K.W. had a GAF score of only 45. (Tr. 592).

Plaintiff claims all of these findings support her claim that K.W. has a marked limitation in

acquiring and using information. However, the fact that K.W. had to take special education classes in only two subjects during his fifth grade year does not establish that K.W. suffers from a marked limitation in acquiring and using information. In fact, as noted by the ALJ, K.W. advanced to sixth and seventh grade without a delay, and the record indicates that K.W. was able to progress in an age-appropriate manner with only some resource class assistance. (Tr. 21). Additionally, both the findings from Mr. Webb and the physician from the Little Rock Pediatric Clinic are dated outside the relevant time period and, therefore, cannot establish K.W.'s disability during the relevant time period. *See Cruse,* 867 F.2d at 1185.

Furthermore, as noted above, Dr. Nobles examined K.W. at a time when he had not taken his prescription medication. Therefore, the results from the examination were not reliable. *See Estes,* 275 F.3d at 725 (holding that an impairment which can be controlled by treatment or medication is not considered disabling). Finally, the counselor's findings–that K.W. only retained a GAF score of 45–are not credible medical findings that can establish K.W. was disabled. *See* 20 C.F.R. § 404.1513 (2008) (stating that only licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists are acceptable sources for establishing a medically determinable impairment). Based upon this review, this Court holds that because Plaintiff has provided no credible evidence establishing a marked limitation in K.W.'s ability to acquire and use information, this Court affirms the ALJ's determination on this issue.

**(2) Attending and Completing Tasks**

The ALJ also determined K.W. had a less than marked limitation in attending and completing tasks. (Tr. 21-22). In making this determination, the ALJ noted that K.W. did not have a marked limitation *even when he did not take his ADHD medication*. (Tr. 22). For instance, the ALJ found

9

that, on March 24, 2005, K.W. was not given his ADHD medication and that, even despite not having this medication, he was able to take standardized IQ and academic achievement tests while displaying only below average concentration. (Tr. 22). Based upon this and other findings, the ALJ determined K.W. had less than a marked limitation in this domain of functioning.

To support her claim that K.W. has a marked limitation in this domain, Plaintiff cited to three progress notes taken from school questionnaires of K.W.'s teachers. (Doc. No. 8, Pages 9-10). First, in a school questionnaire dated February 15, 2005, one of K.W.'s teachers noted that she "could tell first thing whether he's [K.W.'s] had his medication or not." (Tr. 338). She noted that K.W. was "one who definitely needs it in order to stay focused & work." *See id.* However, this teacher did not find that K.W. *could not function when he took his medication. See id.* In fact, this teacher noted that she had no problems with K.W. as long as he took his medication. *See id.* Impairments that can be controlled with medication are not considered disabling. *See Estes,* 275 F.3d at 725 (holding that an impairment which can be controlled by treatment or medication is not considered disabling). Therefore, this progress note does not establish that K.W. suffers from *any limitation* (much less a marked limitation) in attending and completing tasks.

Second, on January 18, 2006, K.W.'s counselor noted that K.W.'s math teacher had stated he could not stay focused, had poor math skills, and had difficulty concentrating. (Tr. 578). This notation may establish that K.W. had *some limitation* in focusing, solving math problems, and concentrating, but it does not establish that K.W. has a marked limitation in attending and completing tasks. For a limitation to be considered "marked," that limitation must seriously interfere with a child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e). This progress note does not establish such a restriction on K.W.'s abilities. Accordingly, this progress note does not establish that K.W. suffers from a marked limitation in

attending and completing tasks.

Third, on October 18, 2006, a counselor at Community Counseling Services, Inc. noted that K.W. did not appear to have a very high IQ, did not appear to understand English, and had problems with academia/school, anxiety/insecurity/fear, communication skills, daily living skills, decision making, depression/sadness, impulsive behaviors, and social interpersonal skills. (Tr. 580). However, once again, although this note may establish K.W. has *some limitation,* it does not establish that he suffers from a marked limitation in attending and completing tasks. Accordingly, based upon this review, this Court holds that because Plaintiff has provided no credible evidence establishing a marked limitation in K.W.'s ability to attend and complete tasks, this Court affirms the ALJ's determination on this issue.

**(3) Interacting and Relating with Others**

The ALJ determined K.W. had a less than marked limitation in interacting and relating with others. (Tr. 22-23). The ALJ based this determination upon the following: (1) medical evidence in the record which showed "normal adolescent issues of moody behaviors and occasional talking without permission in the classroom"; (2) medical evidence in the record indicated that K.W. would be better able to interact appropriately with other others if he took his medication consistently; (3) there was no indication K.W.'s behavior could not be controlled with normal school discipline and there was no indication K.W. had any significant behavioral problems with teachers or peers; and (4) there was no indication that K.W. had any serious problems in his home environment. (Tr. 23).

Plaintiff claims K.W. has a marked limitation in this domain of functioning, arguing that the findings from Community Counseling Services, Inc. support her claim. (Doc. No. 8, Pages 10-11). Specifically, while being treated at Community Counseling Services, Inc., K.W. was assessed with GAF scores of 40 and 45. (Tr. 589, 592). Plaintiff claims these low GAF scores establish that K.W.

11

has a marked limitation in interacting and relating with others. However, as noted above, these two GAF scores were apparently assessed by counselors, not by acceptable medical sources. *See id.* Therefore, they cannot be used to establish K.W.'s disability. *See* 20 C.F.R. § 404.1513 (2008) (stating that only licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists are acceptable sources for establishing a medically determinable impairment). Accordingly, based upon this review, this Court holds that because Plaintiff has provided no credible evidence establishing a marked limitation in K.W.'s ability in to interact and relate with others, this Court affirms the ALJ's determination on this issue.

**(4) Moving About and Manipulating Objects**

Plaintiff does not claim K.W. suffers from any limitation in this domain of functioning. (Doc. No. 8).

**(5) Caring for Yourself**

The ALJ determined that K.W. had no more than a slight or minimal limitation in his ability to care for himself. (Tr. 25). The ALJ based this determination upon K.W.'s medical and school records, which reflected no assessment of developmental delay in this area. *See id.* Plaintiff, however, claims K.W. has a marked limitation in this area. (Doc. No. 8, Pages 11-12). Plaintiff bases her claim that K.W. suffers from a marked limitation in this domain on her testimony and K.W.'s testimony at the administrative hearing on October 12, 2006. *See id.* Plaintiff has offered no other evidence in support of her claim. *See id.*

In his opinion, the ALJ reviewed Plaintiff's and K.W.'s testimony at the administrative hearing and discounted it for legally-sufficient reasons. (Tr. 19-26). Plaintiff does not claim that the ALJ erred in evaluating their statements at this hearing; and after reviewing the decision, this

Court finds the ALJ did not err in assessing Plaintiff's and K.W.'s credibility. Specifically, the ALJ properly evaluated these subjective complaints and noted several inconsistencies between their testimony and record which included the following: (1) despite Plaintiff's subjective complaints regarding K.W.'s impairments, Plaintiff offered no medical foundation to support these allegedly disabling impairments, (2) despite her subjective complaints regarding K.W.'s impairments, Plaintiff's allegations were not consistent with the longitudinal record and with her own prior statements and allegations, and (3) despite Plaintiff's subjective complaints regarding K.W.'s impairments, K.W.'s medical records show Plaintiff inconsistently treated K.W. with prescription medication for his claimed impairments. (Tr. 19-20). Accordingly, based upon this review, this Court holds that because Plaintiff has provided no credible evidence establishing a marked limitation in K.W.'s ability to care for himself, this Court affirms the ALJ's determination on this issue.

**(6) Health and Physical Well-Being**

Plaintiff does not claim K.W. suffers from any limitation in this domain of functioning. (Doc. No. 8).

**4. Conclusion:**

Based upon the foregoing, this Court finds that the ALJ's determination, that K.W.'s impairments were not medically or functionally equivalent to a Listing, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

ENTERED this 28th day of October, 2008.

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE